UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EDWARD L. MCVAY, <br> MARY W. MCVAY, <br> ONE STOP STORAGE, Inc., <br> <br> Plaintiffs, <br> <br> vs. <br> <br> THE STORE HOUSE COMPANY, <br> STORE HOUSE OF INDIANAPOLIS LLC, <br> TSHI STORAGE, LLC, <br> DONALD TOLVA, <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> )     No. 1:16-cv-00644-SEB-MJD <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' *Motion to Dismiss*. [Dkt. 45.] On September 16, 2016, District Judge Sarah Evans Barker designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 54.] For the reasons set forth below, the Magistrate Judge recommends Defendants' motion be **GRANTED IN PART** and **DENIED IN PART**.[1]

### I.   Background

This action stems from a contract dispute between Plaintiffs Edward L. McVay ("Larry"), Mary W. McVay ("Mary"), and One Stop Storage Inc. ("One Stop") (collectively, "Plaintiffs") and Defendants The Store House Company ("Store House"), Store House of Indianapolis L.L.C.

---

[1] On August 17, 2016, Plaintiffs filed the Amended Complaint. [Dkt. 42.] The Amended Complaint renders the original Motion to Dismiss [Dkt. 21] moot, which thereby renders portions of the Report and Recommendation [Dkt. 39] and Defendants' objection thereto [Dkt. 41] moot as well.  Accordingly, the Magistrate Judge further recommends that Docket Nos. 21 and 41 be **DENIED AS MOOT** and that Docket No. 39 be **VACATED AS MOOT** to the extent it addresses Plaintiffs' breach of contract claims, which are addressed herein in the context of the Amended Complaint.

1

("SHI"), TSHI Storage L.L.C. ("TSHI"), and Donald Tolva ("Tolva") (collectively, "Defendants"). Plaintiffs assert they owned property at 2425 N. Mitthoeffer Road in Indianapolis, Indiana (the "Property") and operated a storage business thereon from March 2003 to 2007. [Dkt. 42 at ¶¶ 14-18.] In 2007, Plaintiffs entered into negotiations with Defendants to sell them the Property. [*Id*. at ¶¶ 19-20.] Plaintiffs allege that during this time, Defendants negotiated solely and aggressively with Mary who was unrepresented by counsel, unfamiliar with the business, and unaware of the true value of the Property. [*Id*. at ¶ 23, 27.] These negotiations culminated with finalizing and executing the Purchase Agreement for Industrial Real Estate ("Purchase Agreement") dictating the terms of the sale.[2] [*Id*. at ¶ 24.]

The Purchase Agreement describes two payments to be made to Plaintiffs for the Property: the first a one-time payment of $1,950,000.00 due at closing, [*Id*. at ¶ 30, 46], and the second to be made pursuant to a Contingent Consideration Payment clause ("Contingent Payment" clause) in the contract. [*Id*. at ¶ 47-48.] The Contingent Payment clause in part states the following:

> Seller shall be eligible to receive future contingent earned equity ("Contingent Payment") at the rate of 50% of any funds available after payment of all "Priority Debt" upon the sale or refinance of the property. ["Priority Debt" shall mean and include all secured and unsecured debt of the property and the LLC or other entity holding title to the Property; and shall include all costs associated with the sale or refinance of the Property.]

[Dkt. 42-1 at ¶ G.] Plaintiffs additionally allege that on or around December 18, 2007, Plaintiffs and Store House executed an Amendment to the Purchase Agreement (the "Amendment").[3]

[Dkt. 42 at ¶ 49.] This Amendment purportedly obligated Store House to provide written notice to the Plaintiffs upon any subsequent sale or refinance of the Property that would trigger the

---

[2] The original contract of sale was attached to the Amended Complaint as Exhibit A. [Dkt. 42-1.]
[3] The Amendment was attached to the Amended Complaint as Exhibit B. [Dkt. 42-2.]

Contingent Payment. [*Id*. at ¶ 51.] Plaintiffs allege that on December 27, 2007, Store House refinanced the mortgage on the Property for $3,060,000.00, thus triggering the Contingent Payment clause, and neither paid the Contingent Payment nor notified Plaintiffs of the refinance as contractually obligated [*Id*. at ¶¶36-56-58.] Further, Plaintiffs allege that Store House then sold the Property to SHI at an unknown date, which sold it to TSHI on or about May 20, 2014, which then refinanced it on that same date. [*Id*. at ¶¶ 60-61.] Plaintiffs allege that, after each of these transactions, Store House neither made a Contingent Payment to Plaintiffs nor notified Plaintiffs of the sales and refinances of the Property. [*Id*. at ¶¶ 64-65.]

On March 22, 2016, Plaintiffs filed a Complaint in the United States District Court for the Southern District of Indiana alleging breach of contract, fraud in the inducement, and fraudulent conspiracy. [Dkt. 1.] On May 6, 2016, Defendants filed a *Motion to Dismiss* pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure seeking to dismiss all of these claims with prejudice. [Dkt. 21.] On July 27, 2016, the Magistrate Judge issued a Report and Recommendation granting Defendants' motion in part without prejudice. [Dkt. 39.] On August 10, 2016, Defendants objected to the Report and Recommendation. [Dkt. 41.] Plaintiffs filed an Amended Complaint on August 17, 2016, repleading the above claims and asserting new claims of breach of the duty of good faith and fair dealing and fraud by the omission, unjust enrichment and breach of fiduciary duty. [Dkt. 42.]

## II. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion, the complaint must provide enough factual information to state a claim for relief that is plausible on its face and "raise[s] a right to relief above the speculative level." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007). A complaint is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the 12(b)(6) stage, all of the "factual allegations contained in the complaint" must be "accepted as true." *Twombly*, 550 U.S. at 572. Furthermore, well-pled facts are viewed in the light most favorable to the plaintiff. *See United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016). But "legal conclusions and conclusory allegations merely reciting the elements of a claim are not entitled to this presumption of truth." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011).

### III. Discussion

#### A. Breach of Contract

Plaintiffs assert two breach of contract claims: (1) Defendants breached the Purchase Agreement by not paying the Contingent Payment when due; and (2) Defendants breached the Amendment to the Purchase Agreement by not providing written notice upon the sale or refinance of the Property. Defendants argue the claims should be dismissed first because Plaintiffs failed to specifically allege the payment of priority debt, as specified in the Contingent Payment provision of the contract. Second, Defendants argue that because neither party signed the Amendment, it does not represent a valid contract and could not have been breached.

The elements of breach of contract are (1) the existence of a contract; (2) the defendant's breach of that contract; and (3) damages as a result. *Roche Diagnostics Operations, Inc. v. Marsh Supermarkets, L.L.C.*, 987 N.E.2d 72, 85 (Ind. Ct. App. 2013). When considering a motion to dismiss, the Court must assume all allegations are true and draw all reasonable inferences in the Plaintiffs' favor. *Davenport*, 815 F.3d at 318. Defendants argue that because Plaintiffs have not explicitly alleged payment of all priority debt on the Property, which is required to trigger the

Contingent Payment, Plaintiffs have failed to properly allege a breach of contract. Specifically, Plaintiffs alleged in Paragraph 73 of the Amended Complaint: "On information and belief, the sales and refinancing were or should have been sufficient to extinguish any Priority Debt." [Dkt. 42 at ¶ 73.] Since the extinguishment of the priority debt was a condition precedent to the payment of the Contingent Payment, Defendants argue, it is an essential element of the breach of contract claim and cannot be pleaded "on information and belief."

Here, the parties delve into the merits of Plaintiffs' breach of contract claim and whether the clauses relating to Priority Debt are ambiguous. These arguments exceed the scope of the Court's review on a motion to dismiss.[4] The issue before the Court is whether Plaintiffs adequately alleged Defendants breached the Agreement by failing to pay the Contingent Payment when due. Plaintiffs allege Defendants refinanced the Property on December 27, 2007, which triggered the Contingent Payment, and Defendants did not make the payment as required. [Dkt. 42 at ¶¶ 56-58.] Plaintiffs further allege Defendants sold the Property on May 20, 2014, which also would trigger the Contingent Payment, and Defendants still did not make the payment. [Dkt. 42 at ¶¶ 61-65.] Plaintiffs then allege that "on information and belief," such refinancing and/or sale should have been sufficient to extinguish the Priority Debt. While Defendants assert Plaintiffs were required to definitively allege the Priority Debt was extinguished, the Court disagrees. Plaintiffs are not in the position to be aware of the details of Defendants' alleged payment of the Priority Debt. Thus, the Court finds Plaintiffs have stated a facially plausible claim that Defendants breached the Agreement by failing to make the Contingent Payment. See *Iqbal*, 556 U.S. at 678.

---

[4] A motion to dismiss tests only the sufficiency of the pleadings, not the merits of the claim. Significant issues remain for determination on the merits of Plaintiffs' claims, to include whether portions of the parties' contract are ambiguous.

Defendants next assert that, because the Agreement does not require Defendants to provide notice of refinancing and/or sale of the Property, and Defendants did not sign the Amendment which does require such notice, Defendants could not have committed a breach by failing to provide notice of sale or refinancing. Whether the Amendment constitutes a valid contract is not to be decided at the motion to dismiss stage of the litigation.[5] A motion to dismiss must be decided on the allegations of the complaint, and the Amended Complaint here alleges the Amendment is a valid contract. Plaintiffs further allege Defendants "led Plaintiffs to believe that they would execute this Amendment as well, though Defendants now contend they did not do so." [Dkt. 42 at ¶ 49.] These allegations constitute a facially plausible claim that Defendants committed a breach of contract by failing to notify Plaintiffs the priority debt had been extinguished. Therefore, Defendants' Motion should be **DENIED** as to Plaintiffs' breach of contract claim.

### B. Fraud

Plaintiffs assert two fraud claims: (1) Defendants fraudulently induced Plaintiffs into selling the Property; and (2) Defendants participated in a fraudulent conspiracy to "deprive Plaintiffs of their Property rights."[6] [Dkt. 42 at ¶¶ 100, 117.] Defendants argue these claims should be dismissed because they fail to allege a material misrepresentation of past or existing

---

[5] In response to Defendants' merits-based argument that any modification of the Agreement was required to be in writing, the Court notes that even a contract providing that any modification thereof must be in writing may nevertheless be modified orally. See *City of Indianapolis v. Twin Lakes Enterprises, Inc.*, 568 N.E.2d 1073, 1084–85 (Ind. Ct. App. 1991).

[6] In Indiana, civil conspiracy is not an independent cause of action. *Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1115 (Ind. Ct. App. 2008). Civil conspiracy is defined as "a combination of two or more persons who engage in a concerted action to accomplish an unlawful purpose or to accomplish some lawful purpose by unlawful means." *K.M.K. v. A.K.*, 908 N.E.2d 658, 662-63 (Ind. Ct. App. 2009) (citing *Boyle v. Anderson Fire Fighters Ass'n. Local 1262, AFL-CIO*, 497 N.E.2d 1073, 1079 (Ind. Ct. App. 1986), *trans. denied*. In other words, civil conspiracy is "just another way of asserting a concerted action in the commission of a tort." *Id*. Thus, the Court will address the claims of fraud and fraudulent conspiracy together. *McNaughton*, N.E.2d at 1115.

fact; instead, Plaintiffs allege a promise to perform a future act (payment of the Contingent Payment) which is not cognizable as fraud under Indiana law. [Dkt. 46 at 10-11.]

Under Indiana law, the elements of fraud are: "(1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage of which the plaintiff complains." *Angel v. Powelson*, 977 N.E.2d 434, 445 (Ind. Ct. App. 2012). Further, it is clear that promises of future conduct cannot support an ordinary fraud claim. *Heyser v. Noble Roman's, Inc.*, 933 N.E.2d 16, 19-20 (Ind. Ct. App. 2010); *Volvo Trucks N. Am. v. Andy Mohr Truck Ctr.*, No. 1:12-cv-448-WTL-DKL, 2013 WL 2938913, at *3 (S.D. Ind. June 14, 2013).

Defendants primarily argue Plaintiffs' fraud claims fail because they rest on the promise to perform a future act (payment of the full value of the Contingent Payment), which cannot serve as a basis of liability for fraud in Indiana. Plaintiffs attempt to reframe the fraud claims in the Amended Complaint by asserting Defendants knowingly misrepresented the contents of the Purchase Agreement and "lulled" Plaintiffs into signing the Agreement without seeking legal advice. [Dkt. 42 at ¶¶ 36-37.] The Indiana Court of Appeals has held that to knowingly misstate the contents of a writing and to purposely misstate facts which would cause the signing of a document is fraud. *Fleetwood Corp. v. Mirich*, 404 N.E.2d 38, 45 (Ind. Ct. App. 1980). In support of their argument, Plaintiffs note a conversation that allegedly occurred between Plaintiff Mary McVay and Defendant Donald Tolva:

> Mary McVay: The only thing that I wish were in there besides the 2 things that were added, is that if you refinance and the total 950 is not met that we will receive the remainder when facility is sold. Can you do this??
>
> Donald Tolva: It's already in the Agreement, but have your attorney write something that you will be comfortable with and I'll look at it. It is part of our

> deal that you would get the later payment that you are talking about, so I'll certainly work on language to satisfy all.

[Dkt. 42 at ¶¶ 36-37.] Plaintiffs assert Defendant Tolva "knowingly misrepresented" the Purchase Agreement by telling McVay that they would receive the $950,000 they were promised, thereby committing fraud. [Dkt. 55 at 11.] Defendants respond that not only is *Fleetwood* distinguishable on its facts, there was no misrepresentation because the Purchase Agreement actually is structured in the manner Mary McVay sought above.

The Court agrees that *Fleetwood* is not helpful to Plaintiffs. In that case, plaintiffs were shareholders in Fleetwood Corporation who met individually with defendants (officers in Fleetwood) and were told the board passed a resolution requiring shareholders to sell their shares at a price below fair market value. The plaintiffs agreed to do so without reading the resolution or purchase agreement, which identified defendants as the purchasers of the shares. The court found defendants' fraudulent conduct induced plaintiffs into selling their shares at an artificially low price. See *Fleetwood*, 404 N.E.2d at 45-46. Unlike in *Fleetwood*, Plaintiff Mary McVay's allegation above demonstrates she read the Agreement and believed she understood it. Plaintiffs also conceded in the Amended Complaint that they did not have an attorney review the Agreement as recommended by Defendants. [Dkt. 42 at ¶ 33 and ¶ 38.] The real estate transaction here is not comparable to the forced sale of stock by shareholders to officers in *Fleetwood*.

Plaintiffs fraud claims are based on the premise that Defendants failed to fulfill their alleged promise to pay the Contingent Payment. This promise to perform a future act cannot form the basis for liability for fraud in Indiana. See *Heyser v. Noble Roman's, Inc.*, 933 N.E.2d at 19-20. As there are no allegations in the Amended Complaint of a material misrepresentation of past or existing fact, Plaintiffs' fraud claims should be **DISMISSED**.

### C. Good Faith and Fair Dealing/Breach of Fiduciary Duty

Plaintiffs' claims for breach of the duty of good faith and fair dealing and breach of fiduciary duty each rely upon Plaintiffs' assertion that a fiduciary relationship existed between the parties. For the reasons set forth below, the Court finds there is no fiduciary relationship therefore these claims should be dismissed.[7]

Defendants contend Plaintiffs' breach of the duty of good faith and fair dealing should be dismissed because the parties' arms-length contractual relationship does not support such a duty. Indiana law does not impose a generalized duty of good faith and fair dealing on every contract; an implied duty is recognized only in certain types of contracts such as employment contracts and insurance contracts. *Allison v. Union Hosp., Inc.,* 883 N.E.2d 113, 123 (Ind. Ct. App. 2008). Such a duty may also arise when a fiduciary relationship exists; or, in the case where there is a buyer and a seller, "where one party may possess knowledge not possessed by the other and may thereby enjoy a position of superiority over the other." *Strong v. Jackson*, 777 N.E.2d 1141, 1147 (Ind. Ct. App. 2002). Plaintiffs assert that, because Defendants were in a superior position to Plaintiffs with regard to the knowledge of Defendants' conduct and the triggering of payment obligations, fiduciary obligations, including the duty of good faith and fair dealing, arose.

Plaintiffs allege Defendants "aggressively negotiated" with Mary McVay, who had only a rudimentary understanding of the business, while Larry McVay was hospitalized. [Dkt. 42 at ¶¶ 16, 23.] Plaintiffs further allege that, while Defendants advised them to seek legal advice, "they did so knowing that the McVay's had no budget for legal fees and were not in a position to obtain meaningful legal advice due to the timing of the proposed sale." [Dkt. 42 at ¶ 33.]

---

[7] The Court's analysis here is equally applicable to Plaintiffs' allegation of constructive fraud, which is argued in their response brief but not actually pleaded in the Amended Complaint; therefore no constructive fraud claim is properly before the Court.

Plaintiffs chose not to consult an attorney and now argue, without citation to authority, that Defendants' resulting "superior position" transformed this ordinary real estate transaction into one with fiduciary obligations. The Court disagrees.

Contractual agreements do not give rise to a fiduciary relationship creating a duty. *See Comfax Corp. v. North American Van Lines, Inc.,* 587 N.E.2d 118, 125-26 (Ind. Ct. App. 1992) (holding that arms-length, contractual arrangement does not create a fiduciary relationship and does not provide basis for constructive fraud claim); *see also Mullen v. Cogdell,* 643 N.E.2d 390, 401 (Ind. Ct. App. 1994) (A fiduciary relationship may not be premised on an arms-length transaction resulting in the formation of a contract.) The very limited exception recognized by Indiana courts where a good faith duty may attach in a buyer-seller relationships does not apply here. For example, in *Stoll v. Grimm*, the sellers of a campground falsely represented in a sales brochure that its electrical systems had been verified as safe for thirty amp use by three electricians. 681 N.E.2d 749 (Ind. Ct. App. 1997). The Indiana Court of Appeals found the sellers liable for constructive fraud to the buyer, who purchased the property relying upon the unqualified statements about the electrical system in the brochure. *Id*. at 758.

Plaintiffs here were not in the same position as the plaintiffs in *Stoll*, whose only knowledge about the campground was provided by the defendants. As sellers of the property here, Plaintiffs actually were in the superior position relative to knowledge about the property. Instead, Plaintiffs assert that only Defendants would know when the duty to pay the Contingent Payment was triggered. However, the same allegation could be made with regard to any contractual relationship wherein one party's conduct triggers a duty under the contract. Plaintiffs present no evidence or authority to support their contention that this type of knowledge creates a fiduciary duty.

Allegations in the Amended Complaint demonstrate that Mary McVay had read and understood the Agreement enough to attempt to negotiate for what she believed was an additional term. The fact that Plaintiffs declined to seek legal advice prior to signing the Agreement does not transform the parties' relationship into one with fiduciary obligations. *See Jaffri v. JPMorgan Chase Bank, N.A.*, 26 N.E.3d 635, 638–39 (Ind. Ct. App. 2015) (noting that "[A]lthough Chase undoubtedly was the more sophisticated party in this scenario, that fact alone has never been held to be enough to form the basis of a breach of fiduciary duty or constructive fraud with regard to a bank or mortgage company's handling of a debt.")  Therefore, the Court finds no fiduciary relationship existed between the parties and Plaintiffs' claims of breach of the duty of good faith and fair dealing and breach of fiduciary duty should be **DISMISSED**.

### D. <u>Unjust Enrichment</u>

Lastly, Plaintiffs allege the Agreement and the Amendment are valid contracts between the parties.  [Dkt. 42 at ¶ 81.] However, they also assert an alternative claim for unjust enrichment.  Defendants move to dismiss this claim on the basis that it is barred by the existence of an express contract between the parties.

When the rights of parties are controlled by an express contract, recovery cannot be based on an equitable remedy. *See Coppolillo v. Cort,* 947 N.E.2d 994, 998 (Ind. Ct. App. 2011); *see also CoMentis, Inc. v. Purdue Research Foundation,* 765 F.Supp.2d 1092, 1103 (N.D. Ind. 2011) ("CoMentis may not seek unjust enrichment *just in case* the contract does not afford it the relief it seeks; a valid contract still governs the parties' rights with respect to the subject matter at issue.") (emphasis in original). An unjust enrichment claim may survive alongside a breach of contract claim only in the limited circumstance where the contract does not fully address an injustice. *See Coppolillo*, 947 N.E.2d at 998. Because Plaintiffs' unjust enrichment claim is

11

based upon the alleged failure to make the Contingent Payment, and that issue is addressed in the parties' contract, the claim must be **DISMISSED**.[8]

### IV. Conclusion

As Defendants' succinctly phrased it, this case revolves around a contract. [Dkt. 57 at 1.] Only the breach of contract claims are sufficient to withstand this 12(b)(6) motion. Based on the foregoing, the Magistrate Judge recommends that the Defendants' *Motion to Dismiss* be **GRANTED IN PART** and **DENIED IN PART**. [Dkt. 45.] Plaintiffs' claims of fraudulent inducement (Count II), breach of duty of good faith and fraud by omission (Count III)[9], fraud/fraudulent conspiracy (Count IV), unjust enrichment (Count V) and breach of fiduciary duty (Count VI) should be **DISMISSED**.  Defendants' Motion should be **DENIED** as to the breach of contract claims (Count I) and the case should proceed as to those claims.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:  24 OCT 2016

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

---

[8] Because the Court finds Plaintiffs' claim of unjust enrichment should be dismissed because an express contract governs the parties' relationship, there is no need to address Defendants' argument that the claim is untimely.
[9] Incorrectly numbered in the Amended Complaint as Count IV.

Distribution:

Todd J. Ohlms
FREEBORN & PETERS LLP
tohlms@freeborn.com

Verona M. Sandberg
FREEBORN & PETERS LLP
vsandberg@freeborn.com

Hamish S. Cohen
MATTINGLY BURKE COHEN & BIEDERMAN LLP
hamish.cohen@mbcblaw.com

Sean P. Burke
MATTINGLY BURKE COHEN & BIEDERMAN LLP
sean.burke@mbcblaw.com

Robert R. Clark
TAFT STETTINIUS & HOLLISTER LLP
rclark@taftlaw.com