UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| EDWARD L. MCVAY, <br> MARY W. MCVAY, <br> ONE STOP STORAGE, INC, <br><br> Plaintiffs, <br><br> vs. <br><br> THE STORE HOUSE COMPANY, <br> STORE HOUSE OF INDIANAPOLIS LLC, <br> TSHI STORAGE, LLC, <br> DONALD TOLVA, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 1:16-cv-00644-SEB-MJD |

**ORDER ON MOTIONS**

The currently pending motions were referred to the Magistrate Judge for a report and recommendation ("R&R"). Those R&Rs were filed and have generated various objections, which we address in this order. Now before the Court are Defendants' Motions to Dismiss [Docket Nos. 21 & 45] and their corresponding R&Rs [Docket Nos. 39 & 61], as well as Plaintiffs/Counter Defendants' Motion to Dismiss Defendants' Counterclaim [Docket No. 58] and its corresponding R&R [Docket No. 68].

For the reasons explained herein, Defendants' First Motion to Dismiss [Docket No. 21] is <u>DENIED as moot</u>, and the Magistrate Judge's R&R on that motion [Docket No. 39] is <u>VACATED as moot</u>. The Magistrate Judge's R&R on Defendants' Second

1

Motion to Dismiss [Docket No. 61] is MODIFIED & ADOPTED, and Defendant's Motion to Dismiss [Docket No. 45] is thus GRANTED in part and DENIED in part. The Magistrate Judge's R&R on Plaintiffs/Counter Defendants' Motion to Dismiss Defendants' Counterclaim [Docket No. 68] is ADOPTED in full, and Plaintiffs/Counter Defendants' Motion to Dismiss [Docket No. 58] is therefore GRANTED.

## Factual Background[1]

This action stems from a contract dispute between Plaintiffs Edward and Mary McVay, and One Stop Storage Inc. ("One Stop") (collectively, "Plaintiffs") and Defendants The Store House Company ("Store House"), Store House of Indianapolis L.L.C. ("SHI"), TSHI Storage L.L.C. ("TSHI"), and Donald Tolva (collectively, "Defendants"). Plaintiffs assert they owned property at 2425 N. Mitthoeffer Road in Indianapolis, Indiana (the "Property") on which they operated a storage business from March 2003 to 2007. Dkt. 42 at ¶¶ 14-18. In 2007, Plaintiffs entered into negotiations with Defendants to sell the Property to them. *Id*. at ¶¶ 19-20. Plaintiffs allege that during the negotiations, Defendants interacted solely and concertedly with Mary who was unrepresented by counsel, unfamiliar with the business, and unaware of the true value of the Property. *Id*. at ¶ 23, 27. Their negotiations culminated in the execution of a Purchase Agreement for Industrial Real Estate ("Purchase Agreement") which set out the terms of the sale. *Id*. at ¶ 24.

---

[1] The following facts are adopted from the Magistrate Judge's Report and Recommendation [Docket No. 61], which factual accounting has not been disputed or objected to by the parties.

The Purchase Agreement describes two payments to be made to Plaintiffs in purchasing the Property: the first, a one-time payment of $1,950,000.00 which was due at closing, *Id.* at ¶ 30, 46, and the second, a payment to be made pursuant to a Contingent Consideration Payment clause ("Contingent Payment" clause) in the contract. *Id.* at ¶ 47-48. The Contingent Payment clause provides, in part, as follows:

> Seller shall be eligible to receive future contingent earned equity ("Contingent Payment") at the rate of 50% of any funds available after payment of all "Priority Debt" upon the sale or refinance of the property. ["Priority Debt" shall mean and include all secured and unsecured debt of the property and the LLC or other entity holding title to the Property; and shall include all costs associated with the sale or refinance of the Property.]

Dkt. 42-1 at ¶ G. Plaintiffs allege that on or around December 18, 2007, the parties to the contract executed an Amendment to the Purchase Agreement (the "Amendment"). Dkt. 42 at ¶ 49. This Amendment purportedly obligated Store House to provide written notice to the Plaintiffs of any subsequent sale or refinance of the Property that would trigger the Contingent Payment. *Id.* at ¶ 51. Plaintiffs allege that on December 27, 2007, Store House refinanced the mortgage on the Property for $3,060,000.00, thus triggering the Contingent Payment clause, and neither paid the Contingent Payment nor notified Plaintiffs of the refinance as it was contractually obligated to do. *Id.* at ¶¶36-58. Further, Plaintiffs allege that Store House sold the Property to SHI at an unknown date, who then sold it to TSHI on or about May 20, 2014, who refinanced the Property on that same date. *Id.* at ¶¶ 60-61. Plaintiffs allege that, after each of these transactions, Store House neither

made a Contingent Payment to Plaintiffs nor notified Plaintiffs of the sales and refinances of the Property. *Id*. at ¶¶ 64-65.

**Procedural Background**

On March 22, 2016, Plaintiffs filed their Complaint, alleging breach of contract, fraud in the inducement, and fraudulent conspiracy. Dkt. 1. On May 6, 2016, Defendants filed a Motion to Dismiss seeking dismissal with prejudice of each of Plaintiffs' claims. Dkt. 21. On July 27, 2016, the Magistrate Judge issued a Report and Recommendation granting Defendants' motion in part without prejudice. Dkt. 39. On August 10, 2016, Defendants objected to the Report and Recommendation. Dkt. 41. On August 17, 2016, Plaintiffs filed an Amended Complaint, repleading the above claims and asserting new claims of breach of the duty of good faith and fair dealing, fraud by omission, unjust enrichment, and breach of fiduciary duty. Dkt. 42. Plaintiffs' Amended Complaint renders the original Motion to Dismiss [Dkt. 21] moot, and thereby renders portions of the Report and Recommendation [Dkt. 39] and Defendants' objection thereto [Dkt. 41] moot as well. Accordingly, Docket Nos. 21 and 41 are hereby <u>DENIED AS MOOT</u> and Docket No. 39 is <u>VACATED AS MOOT</u> to the extent it addresses Plaintiffs' breach of contract claims, which are addressed by the Magistrate Judge in his R&R on Defendants' second Motion to Dismiss.

On August 31, 2016, Defendants filed their second Motion to Dismiss, seeking dismissal of each of Plaintiffs' claims. Dkt. 45. On October 24, 2016, the Magistrate Judge issued a Report & Recommendation on that motion, recommending that we <u>DENY</u>

4

Defendants' motion regarding Plaintiffs' breach of contract claims, and GRANT their motion regarding Plaintiffs' claims of fraudulent inducement, conspiracy to commit fraud, breach of the duty of good faith and fair dealing, breach of fiduciary duty, and unjust enrichment. Dkt. 61. On November 8, 2016, Plaintiffs filed an Objection to the R&R, contending that the Magistrate Judge erred in recommending that their claims of fraud, breach of the duty of good faith and fair dealing, and breach of fiduciary duty should be dismissed. Dkt. 67. Defendants responded to the Objection on November 22, 2016, Dkt. 72. These issues are now ripe for decision by this Court.

**Legal Standard**

Rule 72(b) of the Federal Rules of Civil Procedure requires a party who disagrees with a magistrate judge's report and recommendation on a dispositive motion to file "specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). "The district court 'makes the ultimate decision to adopt, reject, or modify' the report and recommendation, and it need not accept any portion as binding; the court may, however, defer to and adopt those conclusions where a party did not timely object." *Jamerson v. Colvin*, 2013 WL 6119245, at *1 (S.D. Ind. Nov. 21, 2013). Upon a timely objection, the district court then determines, *de novo*, "any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P.

72(b)(3); *see also* 28 U.S.C. § 636(b)(1); *Remy Inc. v. Tecnomatic, S.P.A.*, 2013 WL 1311095, at *1 (S.D. Ind. Mar. 26, 2013).[2]

Accordingly, our review of the challenged portions of the magistrate judge's R&R on Defendants' motion to dismiss is conducted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) provides that a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 556).

**Discussion**

In his Report & Recommendation filed on October 24, 2016, Magistrate Judge Dinsmore reached the following conclusions:

(1) Plaintiffs have stated a facially plausible claim that Defendants breached the Purchase Agreement by failing to make appropriate contingent payments, pursuant to the Agreement's Contingent Payment Clause. Dkt 61 at 5.

---

[2] On October 13, 2016, Plaintiff/Counter Defendants filed a Motion to Dismiss Defendants' Counterclaim. Dkt. 58. The Magistrate Judge submitted a Report & Recommendation on November 9, 2016, recommending that the motion be granted. Dkt. 68. More than fourteen days have now passed without objection by the parties; therefore, we hereby <u>ADOPT</u> the R&R [Dkt. 58] and <u>GRANT</u> Plaintiff/Counter Defendants' motion [Dkt. 58].

6

(2) Plaintiffs have stated a facially plausible claim that Defendants committed a breach of contract by failing to notify Plaintiffs that the priority debt(s) had been extinguished, pursuant the Amendment to the Purchase Agreement. *Id.* at 6.

(3) Plaintiffs' claims of actual fraud and fraud in the inducement must be dismissed because Plaintiff's Amended Complaint contained no allegations that Defendants made material misrepresentations of past or existing fact, but instead alleged that Defendants failed to fulfill their alleged promises under the Purchase Agreement. *Id.* at 8.

(4) Plaintiffs' claim of breach of the duty of good faith and fair dealing and breach of fiduciary duty must be dismissed because, based on the allegations contained in the Amended Complaint, no fiduciary relationship existed between the parties. *Id.* at 11.

(5) Plaintiffs' claim of unjust enrichment must be dismissed because an express contract governs the parties' relationship, barring recovery on an equitable remedy. *Id.* at 12.

Plaintiffs' objections are directed towards the third and fourth conclusions, namely, that their claims of fraud and breach of the implied duty of good faith and fair dealing and breach of fiduciary duty should be dismissed. We address their objections below.

## I. Fraud[3]

Plaintiffs' original Complaint, filed on March 22, 2016, contained the following allegations of fraud:

> The Contingent Consideration Payment was a material portion of the Agreement and Plaintiffs would not have sold the Property [for what they contend was nearly one million dollars below market value] without the expectation that [Defendants] intended to pay the full value of the Contingent Consideration Payment ($950,000).
>
> \* \* \*
>
> [Defendants] represented that it was [their] **intent** that the full Contingent Consideration be made, to which Mary replied, "I trust you."
>
> [Defendants] materially misrepresented that [they] **would provide** Plaintiffs with written notice and the Contingent Consideration Payment.
>
> \* \* \*
>
> These representations were false and made[,] and [Defendants] **never intended** to pay Plaintiffs any Contingent Consideration Payments.
>
> [Defendants] intended Plaintiffs to rely upon these false representations.
>
> [Defendants'] false representations induced and caused Plaintiffs to sell the Property to [Defendants].

Dkt. 1 ¶¶ 70–72, 74–76, 78 (emphasis added).

---

[3] As a threshold matter, we note that Plaintiffs' Amended Complaint alleges two separate claims for fraud: fraud in the inducement and fraudulent conspiracy. Given that civil conspiracy is not an independent cause of action under Indiana law, we address their claims of fraud in the inducement and fraudulent conspiracy together. *See Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1115 (Ind. Ct. App. 2008) (instructing to "address the two [claims] together because civil conspiracy is not an independent cause of action").

On May 6, 2016, Defendants moved to dismiss Plaintiffs' claims of fraud, arguing, among other things, that "Plaintiffs' fraud claims must be dismissed because they relate to alleged promises of future conduct, which cannot form the basis of a fraud claim under Indiana law." Dkt. 22 at 8. The Magistrate Judge agreed with Defendants, and, on July 27, 2016, recommended that Plaintiffs' claims of fraud be dismissed, stating:

> None of these allegations, or any others in the Complaint, relate to any misrepresentation of past or existing fact and speak only to promises to act in the future…Indiana law is clear that promises of future conduct cannot form the basis of an ordinary fraud claim.

Dkt. 39 at 7 (citing *Siegel v. Williams*, 818 N.E.2d 510, 515 (Ind. Ct. App. 2004)).

Thereafter, on August 17, 2016, Plaintiffs' filed an Amended Complaint, in which they altered fraud allegations to state the following:

> [Defendants] represented on August 3, 2007 that they had an obligation to make a full $950,000 payment and **that [t]his obligation was already in the Parties' draft Agreement.** This statement – about what the Agreement said – was a statement of past or existing fact.
>
> Defendants made this statement with knowledge of its falsity intending to fraudulently induce Plaintiffs' to enter into the Purchase Agreement and to sell the Property because they knew Plaintiffs would not do so unless they believed they would receive the second $950,000 payment.
>
> Defendants intended that Mary and therefore Plaintiffs would rely upon these statements.
>
> Plaintiffs did rely upon Defendants' statements regarding existing language and meaning of their agreement.
>
> They did so to their detriment as Defendant have, ever since, refused to pay the $950,000 they promised would be due and owing.

9

Dkt. 42 ¶¶ 95–99.

On August 31, 2016, Defendants moved to dismiss Plaintiffs' Amended Complaint, arguing that "the allegations [of fraud] contained in Plaintiffs' Amended Complaint still relate only to alleged promises to perform future acts, namely[,] the intention to pay the full Contingent Consideration Payment." Dkt. 46 at 13. The Magistrate Judge agreed with Defendants, and, on October 24, 2016, recommended that Plaintiffs' amended claims be dismissed, once again finding that "Plaintiffs fraud claims are based on the premise that Defendants failed to fulfill their alleged promise to pay the Contingent Payment." Dkt. 61 at 8.

Plaintiffs' objection is this: unlike their original allegations, which concerned Defendants' promises and intent to pay the $950,000 Contingent Payment, their amended allegations of fraud concern Defendants' misrepresentations regarding the *contents* of the Purchase Agreement as of August 3, 2007. We agree with Plaintiffs that, as amended, these allegations appear sufficient to state a claim for fraud in the inducement. This claim, however, does not inspire confidence in terms of its ultimate viability since the contents of the Purchase Agreement were likely readily discernible from the document itself.

That said, we recognize that fraud in the inducement occurs when a party, through fraudulent misrepresentations, induces another to enter into a contract. *Lighting Litho, Inc. v. Danka Indus., Inc.*, 776 N.E.2d 1238, 1241 (Ind. Ct. App. 2002). One form of fraud in the inducement occurs when a party knowingly misrepresents the contents of a

writing and, through fraud and deceit, "lulls" another into signing the document without first reading it for himself in reliance on another's representation as to its character or content. *See Ruff v. Charter Behavioral Health Sys. of Nw. Ind., Inc.,* 699 N.E.2d 1171, 1174 (Ind. Ct. App. 1998) ("[I]f one knowingly misrepresents the contents of a writing or if the fact is established that the signee was lulled by fraud and deceit into omitting to read the document for himself[,] a charge of fraud is maintainable ...." (quoting *Farm Bureau Mut. Ins. Co. v. Seal,* 179 N .E.2d 760, 765 (1962))); *Fleetwood Corp. v. Mirich*, 404 N.E.2d 38, 45 (Ind. Ct. App. 1980) ("To knowingly misstate the contents of a writing and to purposely misstate facts which would cause the signing of the same is fraud.").

In their Amended Complaint, Plaintiffs allege that on August 3, 2007, Plaintiff Mary Mcvay and Defendant Donald Tolva had the following conversation regarding the contents of the parties' newly-altered Purchase Agreement:

> **Mary McVay:** The only thing I wish were in there besides the 2 things that were added, is that if you refinance and the total 950 is not met we will receive remainder when facility is sold. Can you do this???
>
> **Donald Tolva:** *It's already in the Agreement*, but have your attorney write something that you will be comfortable with and I'll look at it. *It is part of our deal that you would get the later payment that you are talking about*, so I'll certainly work on language to satisfy all.

Pls.' Am. Compl. at ¶¶ 36–37 (emphasis added). Whether this constitutes a "fraud and deceit" which "lulled" Plaintiffs into signing the Purchase Agreement, we cannot determine at this juncture. According to Plaintiffs, Tolva's representation that, as of August 3, 2007, the Agreement contained a provision guaranteeing that upon either the

11

refinance or the sale of the Property, Plaintiffs would receive an additional payment of $950,000, was false. They allege further that they would not have entered into the Agreement to sell the property for $1.95 million up front without such a guarantee for the remaining $950,000—a fact of which Defendants were aware—but that in reliance on Defendants' representation that such a guarantee was "already in the Agreement," they proceeded to executed the document, after which, the Property was sold and refinanced several times without any payment ever being made to them.

These allegations suffice to state a claim for fraud in the inducement. Plaintiffs have identified an alleged misrepresentation of existing fact (i.e., the contents of the Agreement as of August 3, 2007), which they allege was false, was made with knowledge of its falsity and with the intent to deceive Plaintiffs, and which representation they rightfully relied upon in executing the document, later resulting in monetary injury. *See Bilimoia Computer Sys., LLC v. Am. Online, Inc.*, 829 N.E.2d 150, 155 (Ind. Ct. App. 2005) (identifying the elements of a fraud claim as "(1) a material misrepresentation of past or existing fact, (2) which was false, (3) was made with knowledge or reckless of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) proximately cause injury to the complaining party.").

Of course, Defendants correctly argue that in order for Plaintiffs to succeed on their claims of fraud, they will need to prove that Tolva's representations made on August 3, 2007 were, in fact, false. In other words, they will need to show that the language in the Agreement differs in material ways from what Mary was requesting be

12

included and which Tolva assured her was already in the document on August 3, 2007. In addition, Plaintiffs will have to establish that they reasonably relied on Tolva's representations and were thus "lulled" by fraud and deceit into signing the Agreement. Plaintiffs likely face an uphill climb regarding this element of their claim, given that Tolva clearly represented the purchasers, not the sellers, in this transaction, and he explicitly instructed the McVays to have their attorney look over the Agreement and "write something [they would] be comfortable with." *See Ruff v. Charter Behavioral Health Sys. of Nw. Indiana, Inc.*, 699 N.E.2d 1171, 1174–75 (Ind. Ct. App. 1998) ("Where persons stand mentally on equal footing, and in no fiduciary relation, the law will not protect one who fails to exercise common sense and judgment.").[4] Nevertheless, we cannot say at this point in the litigation that Plaintiffs had no right to rely on Tolva's representations or that Tolva's representations were not materially false. Questions of misrepresentation, deception, reliance, and proximate cause are questions of fact, requiring factual development by the parties. At the motion to dismiss stage, we assume all allegations are true and draw all reasonable inferences in Plaintiffs' favor. Accordingly, on this narrow ground, we MODIFY the Report & Recommendation [Docket No. 61], and DENY Defendants' Motion to Dismiss [Docket No. 45].

---

[4] Indeed, we agree with Defendants and the Magistrate Judge that, in this regard, Plaintiff's reliance on *Fleetwood* is misplaced. In *Fleetwood*, it was clear that based on their fiduciary relationships, the plaintiff/shareholders were entitled to rely on the defendant/board members' misrepresentations regarding the purchase agreements in lieu of reading them for themselves. 404 N.E.2d at 45–46. Here, there exists no fiduciary relationship between the parties and thus Plaintiffs will need to show by some other means that is was reasonable for them to have been lulled into believing Tolva's representations as to the character and content of the Agreement, if those representations are shown to be, in fact, false.

13

## II. Breach of Duties

Plaintiffs have also raised claims of breach of fiduciary duty and breach of the implied duty of good faith and fair dealing. Dkt. 42 (Counts III & VI). Magistrate Judge Dinsmore recommended in his October 24, 2016 R&R that these claims be dismissed because they rely on a fiduciary relationship which does not exist between the parties. Dkt. 61 at 9.

It is well established that under Indiana law, "[a] fiduciary relationship may not be premised on an arms[-]length transaction resulting in the formation of a contract." *Am. United Life Ins. Co. v. Douglas*, 808 N.E.2d 690, 701 (Ind. Ct. App. 2004) (citing *Mullen v. Cogdell*, 643 N.E.2d 390, 401 (Ind. Ct. App. 1994)). Nor does Indiana law impose a generalized duty of good faith and fair dealing on parties to a contract, absent special circumstances. *Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 123 (Ind. Ct. App. 2008).

Nonetheless, Plaintiffs have objected to the recommendation, contending that the Purchase Agreement created a post-transaction relationship between the parties akin to those relationships on which the Indiana Courts have imposed a duty of good faith and fair dealing. Specifically, Plaintiffs maintain that the intent of the Contingent Payment Clause was for the parties to share equally in any net proceeds resulting from the future sale or refinance of the Property, which intent "cannot be fulfilled if, as Defendants contend, they have no duty whatsoever to recognize and protect Plaintiffs' interest." Dkt. 72 at 9. In arguing that they are entitled to such a duty, Plaintiffs liken their post-transaction relationship with Defendants to those recognized by the courts in *Strong v.*

*Jackson*, 777 N.E.2d 1141 (Ind. Ct. App. 2002) and *Barth v. Barth*, 659 N.E. 561, 562 (Ind. 1995). See Dkt. 72 at 9–10.

In *Strong*, the defendant, who had provided legal counsel to the plaintiff on several matters, had been designated as the plaintiff's attorney-in-fact, and had been granted power of attorney, conducted a land transfer in which he conveyed to himself the plaintiff's farm and the personal property thereon in exchange for paying an outstanding judgment against the plaintiff and allowing the plaintiff to reside on the property for the remainder of his life. 777 N.E.2d at 1144. In the plaintiff's constructive fraud suit against the defendant, in which he alleged to have been fooled by the defendant into relinquishing his farm without preserving at least a life estate, the Indiana Court of Appeals held that the defendant owed the plaintiff a duty of good faith and fair dealing based on the parties' relationship, finding that "the facts clearly and convincingly reflect a relationship of continuous trust and confidence [by the plaintiff in the defendant] beyond the formality of the Power of Attorney." *Id.* at 1148.

In *Barth*, the Indiana Supreme Court allowed a minority shareholder to proceed directly against a corporation, its president, and the majority shareholder, reasoning that the "trust and confidence which are essential to th[e] scale and manner of enterprise, and the inherent danger to minority interests in [] close corporation[s]" require that shareholders in a closely-held corporation "stand in a fiduciary relationship to each other, and as such, must deal fairly, honestly, and openly with the corporation and with their fellow shareholders." 659 N.E.2d 559, 561 (Ind. 1995).

15

We agree with the Magistrate Judge that the facts alleged in Plaintiffs' Amended Complaint do not resemble either of these relationships and cannot create a legal duty between the parties. Here, the parties engaged in a one-time real estate transaction with one another culminating in the formulation and execution of the Purchase Agreement. As we have previously explained, this arms-length transaction cannot form the basis of a fiduciary relationship akin to shareholders in a closely-held corporation. *See Douglas*, 808 N.E.2d at 701. Moreover, while it is true that, pursuant to the Contingent Payment Clause, both parties stood to benefit from the resale or refinance of the Property, over which Defendants would retain control and ownership, the potential that both parties might benefit as a result of future transactions falls far short of placing Defendants in a position legally synonymous to that of a purchaser holding power of attorney for the seller. Given that issues of duty are questions of law, *See Purcell v. Old Nat'l Bank,* 972 N.E.2d 835, 842–43 (Ind. 2012), we need no further factual development on Plaintiffs' claims that Defendants breached their duties. We therefore <u>ADOPT</u> the Magistrate Judge's Report & Recommendation [Docket No. 61] and <u>GRANT</u> Defendants' Motion to Dismiss [Docket No. 45] with regard to these claims.

## Conclusion

For the reasons explained above, Defendants' First Motion to Dismiss [Docket No. 21] is <u>DENIED as moot</u>, and the Magistrate Judge's R&R on that motion [Docket No. 39] is <u>VACATED as moot</u>. The Magistrate Judge's R&R on Defendants' Second Motion to Dismiss [Docket No. 61] is <u>MODIFIED & ADOPTED</u>, and Defendant's

16

Motion [Docket No. 45] is GRANTED in part and DENIED in part. The Magistrate Judge's R&R on Plaintiffs/Counter Defendants' Motion to Dismiss Defendants' Counterclaim [Docket No. 68] is ADOPTED in full, and Plaintiffs/Counter Defendants' Motion to Dismiss [Docket No. 58] is GRANTED.

IT IS SO ORDERED.

Date: 02/21/2017

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Todd J. Ohlms
FREEBORN & PETERS LLP
tohlms@freeborn.com

Verona M. Sandberg
FREEBORN & PETERS LLP
vsandberg@freeborn.com

Emily J. Stine
Freeborn & Peters LLP
estine@freeborn.com

Hamish S. Cohen
MATTINGLY BURKE COHEN & BIEDERMAN LLP
hamish.cohen@mbcblaw.com

Sean P. Burke
MATTINGLY BURKE COHEN & BIEDERMAN LLP
sean.burke@mbcblaw.com

Robert R. Clark
TAFT STETTINIUS & HOLLISTER LLP
rclark@taftlaw.com

Steven C. Shockley
TAFT STETTINIUS & HOLLISTER LLP

sshockley@taftlaw.com